# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, by and through MOTHER DOE, as parent and next friend, | |
| Plaintiff, | No. 15 CV 5018 |
| v. | Judge Manish S. Shah |
| CHICAGO BOARD OF EDUCATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Kindergartener John Doe was inappropriately touched by a classmate in his school bathroom. Now, through his mother, Doe brings suit against the Chicago Board of Education, claiming that the Board violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), by discriminating against him on the basis of his sex and that the Board was negligent in training its staff to protect students from sexual abuse and in supervising its staff and students. The Board moves for summary judgment. For the reasons below, the motion is granted.

## I.     Legal Standards

Summary judgment is appropriate if the Board shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). There is a genuine dispute over a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As the movant, the Board bears the burden of establishing that the summary judgment standard is met, but

Doe must provide evidence to establish every element of his claim for which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). I construe the facts in the light most favorable to Doe and draw reasonable inferences from them in his favor. *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018).

## II. Background

### A. Local Rule 56.1

Local Rule 56.1 is the rule that governs summary judgment filings in this district, and it is an important one. Summary judgment motions often hinge on factual disputes, and efficiently isolating which facts are in dispute and why requires organization and adherence to common rules. For this reason, the Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases).

Doe's response to the Board's statement of material facts runs afoul of the rule. The first issue is its form. The response must consist of "numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed." L.R. 56.1(b)(3)(A). In other words, "the nonmovant's response should mirror the movant's statement in form (i.e. paragraph one of the response should correspond to paragraph one of the movant's statement)." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The 22 paragraphs of Doe's response do not correspond to the 75 paragraphs in the Board's statement of facts; instead, they lump responses to facts

2

together. *See, e.g.*, [97] ¶ 1[1] ("Plaintiff does not dispute any of the facts set forth in ¶¶ 1 through 7."). That is not the proper way to respond. Part of the problem with deviating from the rule-mandated form is that it is easier for facts to get lost, which may be what happened here. Doe did not respond to several of the Board's facts. *See* [97] ¶¶ 30–32, 34, 48–50, 54, 56–57, 60, 63–64, 72. The omissions may be inadvertent or intentional, but either way, the facts are deemed admitted as a result. *See* L.R. 56.1(b)(3)(C).

Another issue is that, contrary to the rule, *id.*, Doe asserts new facts in his responses to the Board's facts. Take this response, for example:

> 5. Plaintiff does not dispute any of the facts set forth in ¶¶ 17 through 23, *but adds that* Mr. Adams is unable to say if there was any unwanted sexual contact between the boys such as genital touching because all he could see from his side of the closed bathroom stall was the boys' pants and underwear around their ankles. (Exh. 2, p. 70). He did not have a clear line of vision.

[97] ¶ 5 (emphasis added). Doe has no license to append an additional fact in this paragraph. By slipping additional facts into his responses in this way, Doe deprives the Board of an opportunity to respond to them. So, I disregard any facts Doe improperly asserted in his responses to the Board's facts.

When Doe does dispute facts, he sometimes fails to cite "specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). *See, e.g.*, [97] ¶ 13 (disputing the Board's fact about a safety plan that kept two boys separated by asserting, without citation, that the safety plan failed to

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings, other than when referring to depositions, in which I use the transcript's page numbers.

3

keep them separated). Disputes without specific citations to evidence supporting them do not controvert the Board's facts, and those facts are deemed admitted. *See* L.R. 56.1(b)(3)(C).

The Board also takes issue with Doe's statement of additional facts, arguing that some of the facts are immaterial, contain legal argument, and lack citations to the record. Where any of those things are true of a fact, I disregard it.[2]

## III. Facts

John Doe was a kindergartener at Wendell Smith—a Chicago public school—in 2013. [93] ¶¶ 6, 17, 26. His principal was Tiffany Brown. [93] ¶ 7. In December of that year, a teaching assistant, Mr. Adams, found Doe in a bathroom stall together with another student, J.G. #2. [93] ¶ 20. The stall was closed, and the boys had their pants down. [93] ¶ 21. Mr. Adams told the boys to come out, and Doe repeatedly said, "I didn't do anything wrong." [93] ¶ 22. Mr. Adams said he told Doe's mother what happened, but she says she was never informed. [93] ¶ 24; [97] ¶ 6.

Mother Doe does recall Mr. Adams telling her about another bathroom incident the following month, in which Doe and R.O.[3] were in a bathroom stall together. [104] ¶ 24. Mr. Adams said he heard sounds suggesting the two were having a "scuffle" or

---

[2] Even if I considered Doe's improperly asserted facts and responses, the outcome of the Board's motion would be the same.

[3] Doe claims that the other boy was R.O., but the Board correctly points out that the evidence he cites to says Mr. Adams would not tell Mother Doe the identity of the other boy and does not mention R.O. *See* [98-1] ¶ 6; [104] ¶ 24. But the Board admits that Doe and R.O. were kept apart in the wake of this incident, [104] ¶ 26, and Mother Doe's declaration states that she later found out the other boy was R.O. [98-1] ¶ 8. There is no prejudice to the Board in recognizing that the other boy in this incident was R.O.

4

"physical altercation." [98-1] ¶ 6; [104] ¶ 24. Doe later told his mother that the other boy had tried to kiss him, and the next day, Mother Doe discussed the incident with Mr. Adams, Principal Brown, and other staff members. [104] ¶ 25. Principal Brown told Mother Doe that they would put a safety plan in place to ensure that Doe and R.O. would not use the bathroom together anymore. [104] ¶ 26. In May 2014, Doe's teacher, Ms. Roberson, told Mother Doe that there was another "incident of sexual contact" between Doe and R.O. [104] ¶ 28. Mother Doe discussed it with Principal Brown the next day. [104] ¶ 28.

R.O. had been having some difficulties at school. Mr. Adams recalled hearing that R.O. had touched his classmates' "behinds" and that, at some point, he was told R.O. was not to use the bathroom with his classmates. [98-2] at 110:23–113:10; [104] ¶¶ 31–32. R.O. also displayed aggressive behaviors, like striking others when he was angry. [104] ¶ 58. Likely because of these issues, the school social worker was having one-on-one meetings with R.O. [104] ¶ 55.

In June 2014, the mother of one of Doe's classmates informed Principal Brown that three boys—Doe, J.G. #1, and R.O.—had shown each other their penises in the bathroom the day before. [93] ¶ 28. Principal Brown immediately spoke with Ms. Roberson, who said she would talk to the boys; the school social worker, who said she would talk with the class about good and bad touching and continue her meetings with R.O.; and the school counselor. [93] ¶¶ 30–32. Principal Brown also called the boys' parents. [93] ¶ 33. Later that week, Principal Brown had a meeting with the school counselor and a representative from Metropolitan Family Services to discuss

5

the bathroom incident and to set up counseling services for the boys, and later that day, she met with the parents to offer them the services. [93] ¶ 34.

The following Monday, the Metropolitan Family Services representative called Principal Brown to say that Mother Doe told him Doe and R.O. had "kissed" each other's penises in the bathroom. [93] ¶ 35. In response, Principal Brown made calls to R.O.'s father, the Board's law department, the Board's department of social/emotional learning, and the Department of Children and Family Services. [93] ¶¶ 36–38. The boys graduated from kindergarten about a week later. [93] ¶ 40.

When first grade began, safety plans were enacted for both Doe and R.O. which kept them separated and instructed that they not go to the bathroom together. [93] ¶¶ 46–47. The boys were assigned to different classrooms. [93] ¶ 48. The boys did have some encounters, like when R.O. was sent to Doe's classroom for misbehaving in his own and when R.O. threw a pencil at Doe during recess. [93] ¶¶ 52, 56; [97] ¶ 15. But first, second, and third grade passed without Principal Brown being informed of any sexual contact between Doe and R.O. [93] ¶¶ 53, 59, 61. Doe stayed at Wendell Smith until December 2016, when he withdrew to be homeschooled. [93] ¶ 62.

## IV. Analysis

### A. Title IX

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Schools districts that receive federal funding are

6

liable for damages for student-on-student sexual harassment "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). There is no dispute that the Board receives federal funding.

The Board raises a threshold issue, which is "whether a five or six year old kindergartner can ever engage in conduct constituting 'sexual harassment' or 'gender discrimination' under Title IX." *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 821 (7th Cir. 2003). It argues that there is no evidence that the boys knew their conduct was sexual, and so "this is not sexual harassment or assault but rather five year [old] boys being five year [old] boys." [92] at 9. Sexual harassment is only one kind of sex-based harassment.[4] Sex-based harassment includes when someone is harassed because of his sex, even if it is not sexual in nature. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998). So, whether the boys knew their conduct was sexual is beside the point. The Board does not make the broader argument that no reasonable jury could find that Doe was harassed because of his sex.

---

[4] Sexual harassment "typically involves explicit or implicit proposals of sexual activity," and courts and juries infer sex discrimination from it by assuming that the harasser would not have sexually propositioned someone of a different sex than the victim since, the assumption goes, people make sexual proposals only to people of their preferred sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). There are obvious problems with applying this chain of inferences to kindergarteners.

7

Damages for sex-based harassment "are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Davis*, 526 U.S. at 652. Viewing the evidence in the light most favorable to Doe, as I must, Doe was subjected to being pantsless in a bathroom with other exposed boys, an attempted kiss, an incidence of unspecified "sexual contact," and an exchange of "kisses" on his and his classmate's penises. A jury could reasonably conclude that this went beyond "simple acts of teasing and name-calling among school children." *Id*. The contact here was in some ways comparable to the specific inappropriate contact in *Gabrielle M.*—contact that the court suggested was not sufficiently severe and offensive. 315 F.3d at 823. But this is a fact-specific inquiry, and inferences drawn in Doe's favor could lead to a conclusion that the escalating conduct culminating in reciprocal oral contact with penises was sufficiently severe and offensive.

Doe has not, however, pointed to any evidence that the conduct at issue had a "concrete, negative effect" on his education. *Id*. (quoting *Davis*, 526 U.S. at 654). In a footnote, Doe says that "after multiple instances of additional incidents of threats and violence by R.O., Mother Doe withdrew John Doe from school." [100] at 10 n.3. That fact is not supported by any citation and is not included in his statement of additional facts, so it is not properly before me. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 703 (7th Cir. 2010) ("[W]e strike any of the parties' factual assertions, in any section of their briefs, that lack direct citation to easily identifiable support in the record."); *Mervyn v. Nelson Westerberg, Inc.*, 142 F.Supp.3d 663, 664 (N.D. Ill. 2015) (collecting

8

cases establishing that Local Rule 56.1 requires parties' briefs to cite to their statements of fact and even citations to the raw record will not do). Anyway, Mother Doe's declaration shows instead that she chose to withdraw Doe because he was being "bullied" by another student—not R.O.—and that Mother Doe felt that the school was not concerned about Doe's safety, in addition to her frustration with how the bathroom incidents were handled. [98-1] ¶¶ 39–42. That Mother Doe was unhappy with the school's treatment of Doe (and unrelated bullying) and chose to withdraw him as a result does not establish that Doe was deprived of access to his education because of the alleged sexual harassment.

Mother Doe says that in the years following the bathroom incidents, Doe's behavior changed—he had emotional outbursts and physical confrontations at school, and he was angry and destructive at home. [98-1] ¶¶ 36–37. Doe even began saying that he no longer wanted to live. [98-1] ¶ 37. Doe sometimes asked to stay home from school because he did not feel safe. [98-1] ¶ 37. One might argue that a reasonable jury could infer that Doe's emotional disturbance resulted from the sexual harassment he suffered and that it shows his education was concretely and negatively harmed.[5] But after the bathroom incidents, Doe fully participated in school activities, maintained his grades, and improved his attendance record. [93] ¶¶ 64–65.[6] In

---

[5] Doe does not make this argument, and so has waived it. I mention it because Mother Doe's declaration is in the record, and the Board cited *Gabrielle M.*, 315 F.3d 817, in support of the proposition that Doe was not denied access to his education. *E.g.*, [103] at 7.

[6] Doe points to a document that he says shows he missed 31 days of school and was tardy 31 times in first grade, but "[t]he same record does not document any absences during kindergarten." [97] ¶ 17. That document does not show any data in the fields for the

9

*Gabrielle M.*, the court explained that "[a]lthough [Gabrielle] was diagnosed with some psychological problems, the record shows that her grades remained steady and her absenteeism from school did not increase," so the harassment did not deny her educational opportunities. *Id.* at 823. As in *Gabrielle M.*, Doe's emotional and psychological suffering is not concrete enough to show that he was denied equal access to education.[7]

In any event, the Board's response to R.O. and Doe's conduct was not "clearly unreasonable." *See id.* at 824 ("[A]s long as the school's response is not 'clearly unreasonable,' it cannot have acted with the requisite deliberate indifference to incur Title IX liability." (quoting *Davis*, 526 U.S. at 648–49)). The Board argues that the evidence does not show that it was deliberately indifferent to the harassment. Doe responds to this argument with no citations to fact or law, arguing only that "it is entirely disputed what response [the Board] had to all of the incidents occurring before June 2, 2014" and "it is ultimately a fact question whether the response was reasonable." [100] at 11–12. To say that there are disputed facts—without specifically identifying them and explaining why they are legally material—is not an appropriate response to a summary judgment motion. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory

---

kindergarten school year—including days present, absent, or tardy. [98-4] at 34. It shows his absences and tardiness improving for second grade.

[7] *But see Gabrielle M.*, 315 F.3d at 828–29 (Rovner, J., concurring) ("Gabrielle may have managed to keep her grades up, yet she nonetheless may have confronted a hostile environment that made it much more difficult for her to develop and achieve as a student," particularly because in kindergarten, "where learning social skills is at least as important as academic instruction, grades do not tell the complete story of how well a student is doing.").

10

and undeveloped arguments are waived, as are arguments unsupported by legal authority."). It is not the court's responsibility to search for the factual disputes and come up with their significance.

Anyway, the facts do not support the conclusion that the Board responded in a clearly unreasonable way. The December 2013 incident was Doe and a classmate found together in the same bathroom stall with their pants down. It is not clearly unreasonable to respond to two kindergarteners in the bathroom together—with no indication of sexual or otherwise inappropriate conduct (despite Mr. Adams's suspicion otherwise)—by doing nothing but telling them to come out. The next incident was Doe and R.O. in the bathroom together, doing something that sounded like a "scuffle" and involved R.O. trying to kiss Doe. It is not clearly unreasonable to respond to that behavior by calling Doe's mother, holding a meeting with school administrators, and enacting a safety plan to keep the boys apart. The third incident was an "incident of sexual touching" involving Doe and R.O., which is so vague that one cannot tell what the reasonable response would be. *See Gabrielle M.*, 315 F.3d at 822 (plaintiff cannot defeat summary judgment with vague assertions like "nasty stuff" and playing "in funny ways"). Mother Doe's declaration says that Ms. Roberson told her that several boys, including Doe and R.O., were being "nasty little boys doing nasty things," like "undressing" in the bathroom. [98-1] ¶ 18. That night, Doe told his mother that the incident involved the boys touching each other's "ding dings." [98-1] ¶ 20. The declaration does not say that Mother Doe told Principal Brown or anyone else at the school about this additional disclosure. Instead, it says Mother Doe told

11

Principal Brown "about the interaction with Ms. Roberson," and Principal Brown said that she was looking into it. [98-1] ¶ 21. With a safety plan already in place, that was not a clearly unreasonable response to—as far as Principal Brown knew—a group of boys undressing in the bathroom. And the Board's response to the last, most severe incident, which involved Doe and R.O. making oral contact with each other's penises, was to call the boys' parents, teacher, school counselor, and school social worker; have the social worker talk to the children about appropriate touching; offer the boys counseling services; and keep the boys apart with a safety plan. That thorough response was not clearly unreasonable. *See Davis*, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law.").

## B. Negligence

Doe's other claim is that the Board was negligent in supervising its students and staff and negligent in training its staff on how to protect students from sexual abuse. Local public entities can only be liable for "an injury caused by a failure to supervise an activity on or the use of any public property" if "the local public entity … is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." 745 ILCS 10/3-108(b).[8] "Willful and wanton conduct" is that which "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the

---

[8] Doe does not contest that the immunity provision applies to his negligence claim.

safety of others or their property." 745 ILCS 10/1-210. The Board argues that because there is no proof that its conduct was willful or wanton, it is immune from Doe's negligence claim.

Here too, Doe responds with argument devoid of citation to fact or law. He says that "the record facts clearly establish that CPS, and particularly Tiffany Brown, had a clear pattern of actively ignoring reports of inappropriate incidents involving John Doe in one of her school's bathrooms." [100] at 13. What those facts are and where I can find them, he does not say. Doe also asserts, again without citation, that Mr. Adams willfully failed to get more information about R.O. touching other children without their consent. [100] at 13. This unsupported, perfunctory response forfeits the argument.

Even if I were to dig into the record to substantiate those factual assertions for Doe, the conclusion would not change. The facts do not demonstrate a "clear pattern" of "actively ignoring" the reported incidents involving Doe. To the contrary, as detailed above, the Board and its agents in fact did respond in some way to all the incidents—from telling the boys to come out of the stall in December 2013 to increasing interventions as more troubling contact occurred. So, a reasonable jury could not conclude that the Board willfully ignored reports of inappropriate behavior involving Doe. And though Mr. Adams said he had heard that R.O. was touching other students on the "behind" but did not want to know details for fear of more responsibility, [104] ¶ 31, there is no evidence that Mr. Adams knew that R.O. was touching Doe or that Doe was at risk of it.

13

Because Doe has not shown that the Board's conduct was willful or wanton, the Board is immune from his negligence claim.

## V. Conclusion

The Board's motion for summary judgment [91] is granted. The clerk shall enter judgment on the merits in favor of the Board and terminate the case.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: August 2, 2019